[No. B048548. Second Dist., Div. Six. July 9, 1991.]

WAYNE GANN et al., Plaintiffs and Appellants, v.
WILLIAMS BROTHERS REALTY, INC., et al., Defendants and
Respondents.

## COUNSEL

Gerald Mason for Plaintiffs and Appellants.

Stoker & Myer and Richard Travers Paynter for Defendants and Respondents.

## OPINION

**STONE (S. J.), P. J.**—Wayne Gann (Gann) and Gann Investments, Inc. (GII) appeal from judgment of dismissal pursuant to Code of Civil Procedure section 631.8, subdivision (a).[1] They contend that the trial court erred in failing to relieve them of their waiver of jury trial and in applying the wrong standard in determining the nonexistence of broker-principal relationship between Williams Brothers Realty, Inc. (Williams Brothers) and GII. We find no error and affirm the judgment.

### FACTS

Appellants filed an action against Williams Brothers and David L. Williams for damages for breach of fiduciary duty, imposition of constructive trust, and intentional interference with economic advantage. The basis of the action was a business transaction concerning appellants' attempt to purchase certain lots in the City of Santa Maria. March 30, 1988, appellants entered into a written contract with Continental Paragon Corporation (Continental) evidenced solely by escrow instructions under the terms of which appellants agreed to purchase 30 lots in tract No. 5445 for $1,395,000. As part of the same transaction, Continental granted appellants an option to purchase an

---

[1]That section provides in pertinent part, "(a) After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, . . ."

additional 28 lots in tract No. 5445 subject to closing escrow on the first 30 lots by May 16, 1988. Appellants obtained additional extensions until June 28, 1988, but were unable to secure financing by that date. Continental informed Gann that the extension to June 28th was the last extension Gann would receive.

Before the March 30th escrow opened on the property, David L. Williams expressed interest to Gann in participating in a joint venture to develop the project and also solicited employment on behalf of Williams Brothers as appellants' broker. At that time, Gann informed Williams that GII had its own subsidiary that acted as broker, but gave Williams all of GII's financial projections and information on the proposed project. Williams Brothers subsequently decided against the joint venture.

Williams again expressed an interest in acting as appellants' broker after escrow opened. According to Gann, he reached an oral agreement with David L. Williams on or about June 1, 1988, in which GII would employ Williams Brothers to act as its broker for a 1.5 percent commission. David L. Williams mailed a listing agreement unsigned by Williams Brothers to GII which Gann signed but did not return. Gann instructed the real estate director of GII to hold the agreement until escrow closed and informed David L. Williams the agreement would be sent at that time. The date of commencement in the listing agreement was contingent upon close of escrow and appellants' acquiring title to the property.

Gann testified that he met with David L. Williams to advise Williams that, although the escrow had expired by its terms, GII was continuing with the project with West Coast Construction in a joint venture and GII would hold to its arrangement with Williams when escrow closed. Gann knew that David L. Williams or Williams Brothers, as the exclusive listing agent for Continental on the Sunrise Hills Project, would receive a commission from Continental on the sale to GII. Gann never asked David L. Williams to participate in any of the negotiations with Continental and Williams was not responsible for GII's inability to obtain financing. The parties stipulated that by July 21, 1988, Williams Brothers was heavily involved in negotiations to purchase the project.

## DISCUSSION

1. *No Abuse of Discretion in Failing to Relieve Plaintiffs of Jury Waiver.*

The Santa Barbara Superior Court Clerk served notice on appellants that they waived the right to jury trial because of failure to deposit jury fees not

less than 25 days before trial as required by Code of Civil Procedure section 631. The next day, appellants' counsel mailed a notice of motion and motion for relief from default based on sections 631 and 473 accompanied by a tender of first-day jury fees. Appellants' counsel declared that, although he was aware of section 631, he was unaware that Santa Barbara County Superior Court applied the section strictly. He had never tried a jury case in Santa Barbara Superior Court or in any county other than San Luis Obispo within the previous five years and in that period, the San Luis Obispo Superior Court Clerk had been willing to accept first-day jury fees from the party demanding a jury at any time prior to commencement of trial.

Respondents filed opposition to the motion in which they argued that appellants failed to show mistake, inadvertence or excusable neglect, but demonstrated merely an erroneous assumption of leniency by a sister jurisdiction. Respondents contended that revival of a jury trial less than five days before trial would work an undue hardship upon them. They stated that they had engaged in substantial preparation of their defense and since they had been informed that appellants had failed to deposit jury fees, had prepared no jury instructions.

Additionally, they stated that appellants' counsel had never attempted to ascertain whether they would stipulate to relief from waiver, but chose to give them only five days within which to prepare their defense for trial by jury rather than a "more simple and expedient trial to the court." The court denied the motion. ▅▅▅ Appellants contend this ruling was an abuse of discretion, that the court gave no reasons for its ruling, and that respondents have not established prejudice from granting the motion.

Section 631 provides in pertinent part that "(a) Trial by jury may be waived by the several parties to an issue of fact in any of the following ways: . . . (5) By failing to deposit with the clerk, or judge, advance jury fees 25 days prior to the date set for trial, . . . [¶] (d) The court may, in its discretion upon just terms, allow a trial by jury although there may have been a waiver of a trial by jury."

▅▅▅ Courts have held that, given the public policy favoring trial by jury, the trial court should grant a motion to be relieved of a jury waiver "unless, and except, where granting such a motion would work serious hardship to the objecting party." (*Boal* v. *Price Waterhouse & Co.* (1985) 165 Cal.App.3d 806, 809 [212 Cal.Rptr. 42].) Where doubt exists concerning the propriety of granting relief from such waiver, this doubt, by reason of the constitutional guarantee of right to jury trial (Cal. Const., art. I, § 16), should be resolved

in favor of the party requesting trial by jury. (*Cowlin* v. *Pringle* (1941) 46 Cal.App.2d 472, 476 [116 P.2d 109].)

The court abuses its discretion in denying relief where there has been no prejudice to the other party or to the court from an inadvertent waiver. (*Winston* v. *Superior Court* (1987) 196 Cal.App.3d 600, 602 [242 Cal.Rptr. 113]; *Byram* v. *Superior Court* (1977) 74 Cal.App.3d 648, 654 [141 Cal.Rptr. 604].) The prejudice which must be shown from granting relief from the waiver is prejudice from the granting of relief and not prejudice from the jury trial. (*Winston* v. *Superior Court*, *supra*, 196 Cal.App.3d at p. 603.) In exercising its discretion, the trial court may consider delay in rescheduling jury trial, lack of funds, timeliness of the request and prejudice to the litigants. (*McIntosh* v. *Bowman* (1984) 151 Cal.App.3d 357, 363 [198 Cal.Rptr. 533].) A court does not abuse its discretion where any reasonable factors supporting denial of relief can be found even if a reviewing court, as a question of first impression, might take a different view. (*Simmons* v. *Prudential Ins. Co.* (1981) 123 Cal.App.3d 833, 839 [177 Cal.Rptr. 37]; *Day* v. *Rosenthal* (1985) 170 Cal.App.3d 1125, 1176 [217 Cal.Rptr. 89].)

Some courts have held that a party should not be able to obtain a reversal on this ground after judgment without a showing of prejudice occurring in the trial. (*McIntosh* v. *Bowman*, *supra*, 151 Cal.App.3d 357, 362.) Although it is difficult to envision precisely how one shows prejudice from denial of a jury trial aside from that inherent in deprivation of a constitutional right, the seldom articulated reason for allowing the trial court's determination to stand is that a party should not be able to play "Heads I win. Tails you lose" by waiting until after judgment to seek review of the denial of relief from jury waiver. (*Id.*, at p. 363.) Thus courts have held that prejudice will not be presumed from the fact that the trial was to the court rather than to the jury. (*Ibid.*; *Byram* v. *Superior Court*, *supra*, 74 Cal.App.3d at p. 653.) Rather, it is presumed that the party had the benefit of a fair and impartial trial. (*McIntosh* v. *Bowman*, *supra*, 151 Cal.App.3d at p. 363.)

■ Consequently, writ of mandate is the appropriate vehicle to secure a jury trial allegedly wrongfully withheld without the usual demonstration of prejudice or miscarriage of justice required to obtain a reversal after judgment. (See *McIntosh*, *supra*, 151 Cal.App.3d at p. 364; *Byram* v. *Superior Court*, *supra*, 74 Cal.App.3d at p. 654; *Winston* v. *Superior Court*, *supra*, 196 Cal.App.3d 600, 603.) Here, however, even without requiring appellants to demonstrate prejudice from the court's denial of their motion, we find no abuse of discretion. Although the trial court did not state any grounds for its ruling, respondents had alleged prejudice to them in their opposition, i.e., that to grant relief within five days of trial would work a hardship in their

trial preparation. We cannot say, as a matter of law, that the court abused its discretion in considering respondents' claim of hardship in denying the motion.

2. *Court Did Not Apply Wrong Standard in Determining Lack of Broker-principal Relationship.*

As appellants indicate, all three of their theories of recovery—broker's breach of fiduciary duty, constructive fraud, and interference with prospective business advantage—rested on the alleged existence of a broker-principal relationship between Williams Brothers and GII at the time Williams Brothers commenced negotiations with Continental for the purchase of the property in question.

■ Appellants assert that, assuming the existence of a broker-principal relationship, Williams would be precluded from appropriating GII's Sunrise Hills business opportunity as it would constitute a breach of the duty of undivided loyalty owed by a broker to his principal. (See *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 741 [336 P.2d 534].) Appellants assert that the trial court erred in finding no fiduciary relationship because the court erroneously believed the statute of frauds prevented it.

■ On appeal from a judgment made pursuant to Code of Civil Procedure section 631.8, the reviewing court views the evidence most favorably to respondent and examines whether substantial evidence exists to support the judgment. (*Robert H. Jacobs, Inc.* v. *Westoaks Realtors, Inc.* (1984) 159 Cal.App.3d 637, 642 [205 Cal.Rptr. 620].) ■ An agent is under a duty not to compete with his principal on matters connected with the agency and a contract of agency may be implied from the parties' conduct. (*Pollack* v. *Lytle* (1981) 120 Cal.App.3d 931, 940 [175 Cal.Rptr. 81].) An agent is charged with the duty of fullest disclosure of all material facts concerning the transaction that might upset the principal's decision. (*Buckley* v. *Savage* (1960) 184 Cal.App.2d 18, 27 [7 Cal.Rptr. 328].) A real estate agent has the same obligation of undivided service and loyalty that is imposed on a trustee in favor of his beneficiary. (*Ibid.*)

■ Additionally, an oral agreement authorizing someone to act as an agent and find a buyer for the principal's property and under which the agent received confidential information respecting the property is sufficient to create a fiduciary relationship between the parties. (See *Beeler* v. *West American Finance Co.* (1962) 201 Cal.App.2d 702, 705 [20 Cal.Rptr. 190].) ■ Although Civil Code section 1624, the statute of frauds, is applicable to the collection of compensation or commission by the agent or broker, it does

not apply to a cause of action to recover from fiduciary commissions or secret profits. (*Steiner* v. *Rowley* (1950) 35 Cal.2d 713, 717 [221 P.2d 9].)

However, the trial court here did not base its decision on the lack of a writing signed by the party to be charged. The court found that a fiduciary relationship never arose because the written agreement stated that the listing was subject to the purchase of the lots of Sunrise Hills Estates. Thus there would be no developer-agent relationship unless and until the developer took title to the property.

Substantial evidence supports the court's finding. In addition to the express wording of the listing agreement, Gann admitted that the listing would be conditioned upon close of escrow and, for that reason, advised David L. Williams that he would not return the listing agreement until that time. He later informed Williams that escrow was cancelled June 28th, weeks before the negotiations between Williams Brothers and Continental took place. Moreover, the information provided by Gann was not to Williams as a broker or potential broker, but to Williams as a potential joint venturer.

Consequently, since no broker-principal relationship ever arose, there was no concomitant fiduciary duty owed to appellants.

The judgment is affirmed. Costs to respondents.

Gilbert, J., and Yegan, J., concurred.