Filed 9/17/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ANDRIJANA MACKOVKSA et al., | B288778 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC639501) |
| v. | |
| VIEWCREST ROAD PROPERTIES LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers and Gregory W. Alarcon, Judges. Reversed.

Law Offices of Walter H. Hackett and Walter Henry Hackett for Plaintiffs and Appellants Andrijana Mackovska and Aleksandar Mackovski.

Lenore L. Albert, in pro. per., for Plaintiff and Appellant Lenore Albert.

Lang, Hanigan & Carvalho and Arthur Carvalho, Jr. for Defendants and Respondents.

———————————————

# INTRODUCTION

Aleksandar Mackovski and Andrijana Mackovska sued Viewcrest Road Properties claiming Viewcrest wrongfully removed their personal belongings and took possession of residential property Viewcrest had purchased at a foreclosure sale. After sustaining Viewcrest's demurrer to Mackovska's causes of action for lack of standing, the trial court set Mackovski's case for a jury trial. The court subsequently ruled, however, Mackovski waived his right to a jury trial by failing to timely post jury fees. Nine days later, Mackovski filed a motion for relief from the jury trial waiver, which the trial court denied, and the case proceeded to a court trial, at which Viewcrest prevailed. But a party opposing a motion for relief from a jury trial waiver must make a showing of prejudice. Because Viewcrest did not make that showing, the trial court erred in denying Mackovski's motion.

Mackovski did not file a petition for writ of mandate seeking immediate appellate review of the trial court's order denying his motion for relief from the jury waiver. Instead, he waited to raise the issue until his appeal from the adverse judgment following the court trial. Some cases hold that when a party seeks review of such an order on appeal from the judgment without having filed a petition for writ of mandate challenging the order, the party must show actual prejudice from the denial of a jury trial. Other cases hold that the party appealing from the judgment need not make such a showing of prejudice. We agree with the latter line of cases and reverse the trial court's order erroneously denying Mackovski's motion for relief from the jury trial waiver. We also reverse an order imposing sanctions

2

against Mackovski, Mackovska, and their attorney, Lenore Albert, under Code of Civil Procedure section 128.5.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Viewcrest Purchases the Property, and the Tenants Move Out*

On August 12, 2013 Viewcrest purchased real property at a foreclosure sale. At the time, two tenants, Barry Young and Marilyn Tesauro, lived at the property and were paying rent to Mackovska. On August 13, 2013 Michael Tessler, acting as a property manager for Viewcrest, delivered a handwritten note addressed to the occupants of the property stating he wanted to discuss the orderly transfer of possession.

That same day, Michael Tessler received a telephone call from a person named Rory who claimed to be a representative of the occupants of the property. Michael Tessler attempted unsuccessfully to meet with Rory to arrange for the occupants to vacate the property voluntarily in exchange for a payment by Viewcrest. Michael Tessler eventually asked for Rory's email address to send a proposal. At Rory's request, Michael Tessler sent Mackovski a draft agreement proposing to pay the tenants $2,500 to vacate the premises voluntarily. Mackovski conveyed a counteroffer of $25,000 by sending an email stating, "Thank you for the offer, but a zero is missing." Viewcrest did not accept Mackovski's counteroffer. Instead, Viewcrest retained an attorney and, on August 22, 2013, served the tenants with a notice to quit.

On August 25, 2013 Young and Tesauro advised Viewcrest in writing they were the tenants of the former owners. Young

3

and Tesauro agreed with Viewcrest they would remain in possession of the property, pay rent to Viewcrest, and voluntarily vacate by November 20, 2013. Young and Tesauro removed most of their belongings from the property on November 9, 2013, intending to vacate the property the next day. Viewcrest intended to take possession of the property as soon as Young and Tesauro moved out.

B.     *Mackovski Moves In*

On November 10, 2013 Young returned to the property to collect his remaining items. While Young was there, Mackovski and another person arrived and attempted to enter the property. Young called the police, who arrived and directed Mackovski and his companion to leave. Disturbed by Mackovski's conduct, Young called Michael Tessler and told him he could no longer protect his (Michael Tessler's) interest in the property. Later that evening, Young met with Irwin Tessler, Michael Tessler's father, to deliver the keys. Young told Irwin Tessler he had left a few belongings at the property and asked Irwin Tessler to place them in the alley behind the house.

Irwin Tessler drove to the property, saw it was occupied, and called the police. The police arrived and said they had already been to the property earlier that day. Irwin Tessler showed the police the trustee's deed upon sale conveying title to Viewcrest and explained that whoever was occupying the property (it turned out to be Mackovski) was there without Viewcrest's consent. The police spoke to Mackovski, who showed them a copy of a complaint Mackovska filed against Bank of America in August 2013 and asserted the complaint gave him the

4

right to occupy the premises. The police left without requiring Mackovski to leave.

### C. *Viewcrest Changes the Locks*

On November 12, 2013 an attorney advised Michael Tessler that Viewcrest could take possession of the property from any unlawful occupants by entering the property at a time and in a manner that would not disturb the peace. Following this advice, Irwin Tessler and his other son, Jason, went to the property, found it vacant, gained access using the keys Young had delivered, and changed the locks. The only items of personal property Irwin Tessler saw in the house were two air mattresses and bedding, a portable radio, some food, a few items of clothing, and several pairs of shoes. In the garage there was a car, a small box of tools, and a washer and dryer.

Rory subsequently went to the property and challenged Irwin Tessler's right to occupancy. Irwin Tessler called the police, who arrived just before Mackovski also arrived. The police inspected the property and informed Mackovski that all of the personal property had been removed and placed either in a pile in the alley or in a car in the garage. The police gave Mackovski some of the personal belongings and drove the car out of the garage.

### D. *Mackovski and Mackovska Sue Viewcrest, and the Trial Court Sets and Re-sets the Case for Trial*

Mackovski and Mackovska, represented by Albert, filed this action on November 2, 2016 against Viewcrest, Michael Tessler, and Irwin Tessler. Mackovski and Mackovska alleged Viewcrest "wrongfully took possession of the [property] and

5

removed all of the tenants' belongings." They asserted causes of action for fraud, trespass to chattels, conversion, negligence, and intentional infliction of emotional distress.

On July 10, 2017 the trial court (Judge Meiers) sustained Viewcrest's demurrer to Mackovska's causes of action without leave to amend. The court overruled Viewcrest's demurrer to Mackovski's cause of action for fraud and his claim for punitive damages. The July 10, 2017 hearing on the demurrer included a case management conference,[1] and the court set the matter for a jury trial on August 21, 2017, six weeks later.[2] Mackovski, however, did not post jury fees on or before the date scheduled for the initial case management conference, thus waiving his right to a jury trial under Code of Civil Procedure section 631.[3]

Meanwhile, on August 16, 2017 Viewcrest and the two individual defendants filed an ex parte application to continue the trial because two "essential third party witnesses," police

---

[1]     On June 14, 2017 the court scheduled a case management conference for July 7, 2017. On June 15, 2017 Viewcrest filed its demurrer and set the hearing for July 10, 2017. We augment the record to include the June 14, 2017 notice of case management conference. (See Cal. Rules of Court, rule 8.155(a)(1)(A).) It appears that at some point the court combined the case management conference and the hearing on the demurrer for the same day, July 10, 2017.

[2]     Both Mackovski and Viewcrest requested a jury trial in their case management statements. We augment the record to include these statements.

[3]     Statutory references are to the Code of Civil Procedure.

6

officers who had responded to calls regarding the incidents at the property, had received trial subpoenas and advised counsel for Viewcrest they would be on vacation during the week of August 21, 2017, when the case was set for trial. Counsel for Viewcrest stated in his supporting declaration that, because the "trial date was set on July 10, 2017, just 32 days [*sic*] before the trial date," he had been "unable to take the depositions of any third party witnesses, including the two police officer[s]."

Mackovski opposed the ex parte application, arguing that Viewcrest and the individual defendants had "represented that they were ready, willing and able to go to trial in August 2017" and that the defendants, as soon as they received Mackovski's trial documents, "all of the [*sic*] sudden said their witnesses were not available and they needed a trial continuance." Mackovski pointed out that the parties had exchanged trial exhibits, witness and exhibit lists, and proposed jury instructions, that the defendants had not propounded any discovery and there was no discovery outstanding, and that the case had "dragged on for almost a year."[4]

The trial court granted Viewcrest's ex parte application to continue the trial. Although the court on July 10, 2017 had set the case for a jury trial, the court's minute order granting Viewcrest's ex parte application stated that "the case is re-set as a court trial for November 9, 2017" and that the final status

---

[4] We augment the record to include Viewcrest's ex parte application to continue the trial and Mackovski's opposition, both filed August 16, 2017.

conference "is waived." The court also ruled the discovery cut-off date would be "as if this was the original trial date."

Seven days later, on August 23, 2017, Mackovski posted jury fees. On August 25, 2017 Mackovski filed a motion for relief from waiver of jury trial, which he called a "motion for jury trial." He argued there was "no known prejudice" to Viewcrest if the court granted the motion. Viewcrest opposed the motion by filing a declaration by its attorney, unaccompanied by a memorandum of points and authorities, stating Mackovski waived his right to a jury trial when he "failed to post jury fees within the time set by the court at the case management conference held July 10, 2017."[5] Counsel also stated neither side objected at the August 16, 2017 hearing on Viewcrest's ex parte application to continue the trial when the court ruled that the case would proceed as a court trial.

On October 5, 2017 the trial court denied Mackovski's motion for relief from the jury trial waiver. The court's minute order stated: "[Mackovski's] motion for a jury trial is denied, [Mackovski] not having timely filed jury fees and having previously stipulated to a court trial." Mackovski did not seek extraordinary writ review of the denial of the motion for jury trial.

---

[5]     We augment the record to include Viewcrest's opposition to Mackovski's motion for a jury trial, filed September 22, 2017.

D.    *The Trial Court Rules for Viewcrest and Sanctions*
        *Mackovski, Mackovska, and Albert*

The parties appeared on November 9, 2017, and the court transferred the case to a different department (Judge Alarcon) for trial.  The trial commenced later that day and concluded after six days of testimony.  On December 11, 2017 the court issued a nine-page proposed statement of decision.  The court credited the testimony of Michael Tessler, Irwin Tessler, and Tesauro and discredited the testimony of Mackovski and Mackovska.  The court stated:  "Through the course of the trial, it became apparent that the two conspired to attempt to force, without any legal justification, Viewcrest to pay them money to gain possession of the Property."  The court ruled in favor of the defendants and against Mackovski on all his causes of action.

On January 4, 2018 Viewcrest filed a motion for sanctions under section 128.5 against Mackovska, Mackovski, and Albert. The proof of service stated counsel for Viewcrest served the motion the previous day.  Viewcrest argued the trial "made clear to the court what [the defendants] have known all along—this case was an attempted shakedown perpetrated by a cadre of grifters with no compunction about how and from whom they try [to] take money.  Of course, the damage they wrought would not have been possible without the assistance of an attorney, who, fully aware of all of the facts and circumstances, lent her skill and knowledge to their effort, extending the proceeding through a lengthy trial."  Viewcrest sought $70,540.95 in attorneys' fees and costs.  Neither the motion, memorandum of points and authorities, nor the declaration of counsel for Viewcrest made any mention of the safe harbor period in section 128.5 or of the untimely service of the motion.  In opposition to the motion for

9

sanctions, Albert, on behalf of herself and her two clients, argued that Viewcrest had given insufficient notice of the motion (less than 16 court days plus five days for mailing) and that there was no evidence the case was prosecuted in bad faith, frivolous, or a delay tactic.

On January 23, 2018 the court overruled Mackovski's objections to the proposed statement of decision. The court adopted the proposed statement of decision as the court's final statement of decision.

On January 29, 2018 the trial court granted Viewcrest's motion for sanctions under section 128.5 and awarded Viewcrest $70,540.95. The court found that Mackovski, Mackovska, and Albert "all continued to prosecute this action frivolously through trial, with both subjective, and objective, bad faith intent, for the reasons set forth in the opposing declaration and exhibits, and based upon the Court's observations during trial." The court also found that "notice was proper" and that a "'party filing a sanctions motion under [section] 128.5 does not have to comply with the 21-day "safe-harbor" waiting period applicable to [section] 128.7.'"

The trial court entered judgment on February 9, 2018. Mackovski, Mackovska, and Albert timely appealed from the judgment and the order imposing sanctions.

10

**DISCUSSION**

A.    *The Trial Court Abused Its Discretion in Denying*
       *Mackovski's Motion for Relief from the Jury Trial*
       *Waiver*

Article I, section 16 of the California Constitution provides: "Trial by jury is an inviolate right and shall be secured to all . . . . In a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute." "'The jury as a fact-finding body occupies so firm and important a place in our system of jurisprudence that any interference with its function in this respect must be examined with the utmost care.'" (*Monster, LLC v. Superior Court* (2017) 12 Cal.App.5th 1214, 1225; see *Brown v. Mortensen* (2019) 30 Cal.App.5th 931, 940 ["'The constitutional right of trial by jury is not to be narrowly construed.'"]; *Hodge v. Superior Court* (2006) 145 Cal.App.4th 278, 283 ["A jury trial is an important constitutional right that should be '"zealously guarded by the courts."'"].) "'The denial of a trial by jury to one constitutionally entitled thereto constitutes a miscarriage of justice and requires a reversal of the judgment.'" (*People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 300.)

A party in a civil case may waive the right to a jury trial under section 631 in several ways, including by failing to deposit jury fees "on or before the date scheduled for the initial case management conference in the action." (§ 631, subds. (c), (f)(5).) Even when a civil litigant waives his or her right to a jury trial, however, the trial court has discretion to "allow a trial by jury." (§ 631, subd. (g); see *Tesoro del Valle Master Homeowners Assn. v. Griffin* (2011) 200 Cal.App.4th 619, 638 (*Tesoro*); *Johnson-Stovall v. Superior Court* (1993) 17 Cal.App.4th 808, 810 (*Johnson-*

11

*Stovall*); *Massie v. AAR Western Skyways, Inc.* (1992) 4 Cal.App.4th 405, 410 (*Massie*).) The trial court should grant a motion for relief of a jury waiver "unless, and except, where granting such a motion would work serious hardship to the objecting party." (*Boal v. Price Waterhouse & Co.* (1985) 165 Cal.App.3d 806, 809 (*Boal*); see *Gann v. Williams Brothers Realty, Inc.* (1991) 231 Cal.App.3d 1698, 1703 (*Gann*).) When there is doubt about whether to grant relief from a jury trial waiver, the court must resolve that doubt in favor of the party seeking a jury trial. (See *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 958 ["because our state Constitution identifies the right to jury trial as 'inviolate' [citation], any ambiguity or doubt concerning the waiver provisions of section 631 must be 'resolved in favor of according to a litigant a jury trial'"]; *Tesoro*, at p. 638 [same]; *Rodriguez v. Superior Court* (2009) 176 Cal.App.4th 1461, 1470 [courts "are to resolve doubts in interpreting the waiver provisions of such a statute [allowing a waiver] in favor of a party's right to a jury trial"].)

In a motion for relief from waiver of a jury trial, the crucial question is whether the party opposing relief will suffer any prejudice if the court grants relief. (*Tesoro*, *supra*, 200 Cal.App.4th at p. 638; see *Johnson-Stovall*, *supra*, 17 Cal.App.4th at p. 810 ["it is well established in cases involving failure to make a request or post fees that there must be prejudice to the party opposing jury trial"]; *Wharton v. Superior Court* (1991) 231 Cal.App.3d 100, 104 ["Where the right to jury is threatened, the crucial focus is whether any prejudice will be suffered by any party or the court if a motion for relief from waiver is granted."].) "'The prejudice which must be shown from granting relief from the waiver is prejudice from the granting of relief and not

prejudice from the jury trial.'" (*Massie*, *supra*, 4 Cal.App.4th at p. 411.) "The mere fact that trial will be by jury is not prejudice per se." (*Johnson-Stovall*, at p. 811.) Denying relief where the party opposing the motion for relief has not shown prejudice is an abuse of discretion. (*Tesoro*, at p. 639; *Johnson-Stovall*, at pp. 811-812; *Massie*, at p. 412.)

In opposition to Mackovski's motion for relief from jury trial waiver, Viewcrest submitted the declaration of its attorney of record, who described as follows the prejudice Viewcrest would suffer if the court granted Mackovski's motion: "Defendants have proceeded as if this case it [*sic*] to be tried to the court. Significant additional expense will be incurred of [*sic*] the case if [*sic*] tried instead to a jury. Defendants will be prejudiced if they are forced to bear this additional expense where (a) Plaintiff has already waived the right to a jury, (b) where the amount in dispute is less than $50,000 . . . and (c) there is no contract providing for the recovery of attorneys fees to the prevailing party." None of these reasons shows prejudice.

As discussed, prejudice from having to try the case to a jury is not prejudice for purposes of a motion for relief from a jury trial waiver. (*Johnson-Stovall*, *supra*, 17 Cal.App.4th at pp. 810-811; *Massie*, *supra*, 4 Cal.App.4th at p. 411.) Thus, counsel's assertion that a jury trial would impose "significant additional expense" does not support the trial court's denial of the motion.

Moreover, counsel's statement that Viewcrest had proceeded as if the parties were going to try the case to the court was not only unsupported by any specifics, it was demonstrably false. As stated, Viewcrest asked for a jury trial, and on July 10, 2017 the court set the case for a jury trial on August 21, 2017. The court did not "re-set" the case for a court trial until August

13

16, 2017, at which time the court continued the trial to November 9, 2017, giving Viewcrest plenty of time to prepare for a jury trial. Given the chronology, the only time Viewcrest could have proceeded as if there was going to be a court trial was the nine-day period from August 16, 2017, when the court "re-set" the trial from a jury trial to a court trial, to August 25, 2017, when Mackovski filed his motion for relief from waiver of jury trial. It is hard to see how, from those nine days, Viewcrest could have suffered "serious hardship" (*Boal*, *supra*, 165 Cal.App.3d at p. 809) or any prejudice that would justify denying Mackovski's motion for relief. And it is equally unlikely Viewcrest could have suffered any other (unarticulated) prejudice because the court had already continued the trial to November 9, 2017, giving Viewcrest over two months to prepare for a jury trial. (See *Johnson-Stovall*, *supra*, 17 Cal.App.4th at pp. 811-812 [granting relief from a jury waiver six days before trial did not prejudice the opposing party because there was still sufficient time to prepare jury instructions, file motions in limine, and exchange trial exhibits]; cf. *Gann*, *supra*, 231 Cal.App.3d at pp. 1704-1705 [trial court did not abuse its discretion in denying a motion for relief from a jury waiver where "to grant relief within five days of trial would work a hardship in [the parties'] trial preparation"].)[6]

---

[6]    Viewcrest asserts that, when the court granted Viewcrest's ex parte application on August 16, 2017 to continue the trial, Mackovski stipulated to a court trial. There is no record, however, of any such stipulation, and Mackovski filed his motion for relief from the jury trial waiver nine days after the hearing on the ex parte application, which suggests he did not stipulate. And even if Mackovski did stipulate to a court trial at the (unreported) hearing on Viewcrest's ex parte application, he

14

Given the procedural status of the case, the evidence of prejudice in counsel for Viewcrest's declaration fell far short. The first specific item of prejudice in the declaration, that Mackovski had already waived his right to a jury trial, was not prejudice at all. It was simply a procedural fact that required Mackovski to file a motion for relief from the jury trial waiver in the first place. It was not a fact the court could use to find Viewcrest would suffer prejudice if the court granted relief.

The second item of prejudice, that the amount in controversy was less than $50,000, was similarly irrelevant. Viewcrest does not argue otherwise, nor cite any evidence in the record of how the amount of Mackovski's claim created any prejudice. Viewcrest also cites no authority for the proposition that having to try a case to a jury is more prejudicial when the plaintiff seeks less than $50,000 or that the right to a jury trial is any less in civil cases involving less than $50,000, or even in limited civil cases involving less than $25,000. The classification of a civil case does not affect the parties' right to a jury trial. Indeed, even where the mandatory expedited jury trial provisions of section 630.20 and California Rules of Court, rule 3.1545 apply in a limited civil case, the parties still have the right to a jury trial (albeit by a "reduced jury panel"). (§§ 630.21, subd. (a); see *id.*, § 630.23, subd. (b) ["The jury shall be composed of eight jurors and one alternate, unless the parties have agreed to fewer jurors."]; *id.*, § 630.26, subd. (a) ["A vote of six of the eight jurors is required for a verdict, unless the parties stipulate otherwise."].)

---

immediately withdrew his stipulation and took appropriate steps to restore the jury trial the court had initially ordered.

The third ground of claimed prejudice, the absence of an attorneys' fees provision, was also not evidence of prejudice. Counsel for Viewcrest presumably was suggesting his clients would be prejudiced because they expected to prevail, but would be unable to recover their attorneys' fees. To the extent that is prejudice, it arises from the American rule requiring litigants, in the absence of an applicable statutory or contractual provision, to bear their attorneys' fees. (See *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 ["Under the American rule, each party to a lawsuit ordinarily pays its own attorney fees."].) It is not prejudice from granting relief from a jury trial waiver.

Viewcrest did not come close to making the requisite showing of prejudice. (See *Boal*, *supra*, 165 Cal.App.3d at p. 810 ["In short, the claim of prejudice borders on being frivolous and cannot support the denial of the motion."].) The trial court abused its discretion in denying Mackovski's motion for relief from the jury trial waiver. (See *Tesoro*, *supra*, 200 Cal.App.4th at p. 639 ["'The court abuses its discretion in denying relief where there has been no prejudice to the other party or to the court from an inadvertent waiver.'"].)

B.  *Mackovski Does Not Have To Show Actual Prejudice*

Mackovski's failure to file a petition for writ of mandate after the trial court denied his motion for relief from jury trial waiver does not preclude review of that order on appeal from the judgment. Although "review by way of extraordinary writ is 'normally . . . the better practice,'" the "denial of a jury trial is 'reviewable on appeal from the judgment.'" (*Monster, LLC v. Superior Court*, *supra*, 12 Cal.App.5th at p. 1224; see *Van de*

16

*Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 862 ["While the better practice is to seek review of such a ruling by writ, saving the time and expense of a court trial if a jury trial improperly was denied, the ruling may be reviewed on appeal from the judgment."].)

Viewcrest argues that, because Mackovski challenged the denial of relief from the waiver of a jury trial after judgment instead of seeking a writ of mandate, Mackovski must show actual prejudice to prevail on his appeal. As in cases considered on a petition for writ of mandate, however, appellants need not show actual prejudice resulting from a trial by the court rather than a jury. (See *Byram v. Superior Court* (1977) 74 Cal.App.3d 648, 654 (*Byram*) [petitioner for writ of mandate need not show actual prejudice caused by improper denial of jury trial after waiver].) Instead, "improper denial of jury trial is per se prejudicial." (*Boal, supra,* 165 Cal.App.3d at p. 810; see *Simmons v. Prudential Ins. Co.* (1981) 123 Cal.App.3d 833, 838-839 (*Simmons*) ["'The denial of a jury trial after waiver where no prejudice is shown to the other party or to the court is prejudicial.'"]; *Bishop v. Anderson* (1980) 101 Cal.App.3d 821, 825 (*Bishop*) [same].)

Viewcrest cites a different line of cases, including *Gann, supra,* 231 Cal.App.3d 1698, *McIntosh v. Bowman* (1984) 151 Cal.App.3d 357 (*McIntosh*), and *Byram, supra,* 74 Cal.App.3d at p. 654, to argue Mackovski must show actual prejudice.[7] The

---

[7] Viewcrest also cites *Winston v. Superior Court* (1987) 196 Cal.App.3d 600, which, like *Byram*, granted a petition for writ of mandate after the trial court improperly denied the petitioner relief from a jury trial waiver. Following *Byram*, the court in

17

court in *Gann* summarized the law from this line of cases as follows: "Some courts have held that a party should not be able to obtain a reversal on [the ground the trial court abused its discretion in denying relief from a jury trial waiver] after judgment without a showing of prejudice occurring in the trial. [Citation to *McIntosh*.] Although it is difficult to envision precisely how one shows prejudice from denial of a jury trial aside from that inherent in deprivation of a constitutional right, the seldom articulated reason for allowing the trial court's determination to stand is that a party should not be able to play 'Heads I win. Tails you lose' by waiting until after judgment to seek review of the denial of relief from jury waiver. [Citation to *McIntosh*.] Thus courts have held that prejudice will not be presumed from the fact that the trial was to the court rather than to the jury. [Citations to *McIntosh* and *Byram*.] Rather, it is presumed that the party had the benefit of a fair and impartial trial." (*Gann*, at p. 1704.)

Neither *Gann* nor *McIntosh* nor *Byram* supports the proposition that an appellant must show actual prejudice following the improper denial of relief from a jury waiver. First, *Byram* was an original proceeding on a petition for writ of mandate, not an appeal. (*Byram*, *supra*, 74 Cal.App.3d at p. 650.) And neither *Gann* nor *McIntosh* concluded the trial courts in

---

*Winston* held, "When a trial court has abused its discretion in denying relief from a waiver of jury trial, a writ of mandate prior to the trial is the proper remedy." (*Winston*, at p. 603.) The court in *Winston* did not address the standard in an appeal or the circumstances in which a party challenging a trial court's denial of relief from a jury trial waiver must show actual prejudice from that ruling.

18

those cases abused their discretion in denying relief from a jury trial waiver. (*Gann*, *supra*, 231 Cal.App.3d at p. 1704; *McIntosh*, *supra*, 151 Cal.App.3d at p. 363.) Thus, at best, the pronouncements by these courts on the standard applied to an appeal challenging a trial court's denial of relief from waiver of a jury trial are dicta. (See, e.g., *Gann*, at pp. 1704-1705 ["even without requiring appellants to demonstrate prejudice from the court's denial of their motion" for relief from the jury waiver, the trial court did not abuse its discretion on the merits of the motion].)

And they are not even persuasive dicta. *Gann*, *McIntosh*, and *Byram* are based on two presumptions that a "chain of case law" (*Byram*, *supra*, 74 Cal.App.3d at p. 652) dating back to 1931 has misapplied and adopted. (See *ibid.* [lamenting the adoption of an inappropriate standard of review of a trial court's denial of a jury trial based on appellate decisions employing overbroad language].) First, *Gann*, *McIntosh*, and *Byram* all repeat the questionable statement that courts cannot presume prejudice from denial of the right to a jury trial because we assume a party had the benefit of a fair and impartial court trial. (See *Gann*, *supra*, 231 Cal.App.3d at p. 1704; *McIntosh*, *supra*, 151 Cal.App.3d at p. 363; *Byram*, at p. 653.) This assumption, however, arises from cases that were *tried to a jury instead of the court* after the plaintiffs had waived their right to a jury trial. (See *Gann*, at p. 1704 [citing *Byram* and *McIntosh*]; *Byram*, at p. 653; *Oakes v. McCarthy Co.* (1968) 267 Cal.App.2d 231, 265; *McIntosh*, at p. 363, citing *Glogau v. Hagan* (1951) 107 Cal.App.2d 313, which cited *Harmon v. Hopkins* (1931) 116 Cal.App. 184, which in turn cited *Doll v. Anderson* (1865) 27 Cal.

19

248.)[8]  These cases, which involved claimed error in having a jury trial rather than a court trial, required a showing of prejudice.  In contrast, "'[d]enial of the right to a jury trial is reversible error per se, and no showing of prejudice is required of a party who lost at trial.'"  (*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2017) 8 Cal.App.5th 1, 18 (*Rincon*); *Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc.* (2015) 238 Cal.App.4th 468, 493 [same]; *Van de Kamp v. Bank of America*, *supra*, 204 Cal.App.3d at p. 862 ["Denial of the right to trial by jury is an act in excess of the court's jurisdiction and is reversible error per se."].)

Second, *Gann*, *McIntosh*, and *Byram* all presume that, if courts do not require a showing of actual prejudice, parties will play "'Heads I win, Tails you lose'" and wait until after judgment to challenge a trial court's denial of relief from a jury waiver. (See *Gann*, *supra*, 231 Cal.App.3d at p. 1704 [citing *McIntosh*]; *McIntosh*, *supra*, 151 Cal.App.3d at p. 363 [citing *Byram*]; *Byram*, *supra*, 74 Cal.App.3d at p. 653.)  *Byram* quoted this coin-tossing language from *Tyler v. Norton* (1973) 34 Cal.App.3d 717, where the trial court held a court trial after a different judge denied the defendants' motion for a jury trial and instructed them to renew

---

[8]     Thus, the sources of the assumption repeated in *Gann*, *McIntosh*, and *Byram* that prejudice by a court trial cannot be presumed are *Oakes v. McCarthy Co.* and *Doll v. Anderson*.  The court in *Oakes* stated:  "There is no presumption that prejudice results merely because the case is tried to a jury."  (*Oakes*, *supra*, 267 Cal.App.2d at p. 265.)  The court in *Doll* similarly stated:  "[I]t would not be presumed that any injury had accrued to the plaintiff in consequence of the issues of fact being tried by a jury instead of the court."  (*Doll*, *supra*, 27 Cal. at p. 251.)

20

the motion in the "trial department," which the defendants failed to do. (*Id.*, at pp. 721-722.) The court in *Tyler* held the defendants could not argue "any error in the assignment of the case" after proceeding, without objection, to try the case for two days to the court. (*Id.* at p. 722.)

Where, as here, the party makes a timely request for relief from a jury trial waiver and neither the other party nor the court would suffer prejudice as a result of that request, the concerns expressed by the court in *Tyler* do not exist. The Supreme Court has made clear that such improper gamesmanship arises when a party loses a case after proceeding with a court trial *without objecting to the absence of a jury* and then complains the case was erroneously tried to the court. (See *Taylor v. Union Pac. R.R. Corp.* (1976) 16 Cal.3d 893, 900-901 [citing *Tyler* and stating "it is well established that '. . . a party cannot without objection try his case before a court without a jury, lose it and then complain that it was not tried by jury'"]; see also *Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 967-968.) That did not happen here. Mackovski (and, when the court initially set the case for trial, Viewcrest) wanted a jury trial, thought he had one (as did Viewcrest), and only lost it because Viewcrest filed an ex parte application to continue the trial and the court, in granting the ex parte application, "re-set" the case for a court trial. There is no suggestion in the record Mackovski was playing games with his right to a jury trial, and Viewcrest does not argue he was. Indeed, Mackovski and Viewcrest did not even know who their trial judge was going to be until the morning of the first day of trial, when Judge Meiers transferred the case to Judge Alarcon for trial. At that point there was no time to file a petition for writ of mandate.

21

Concluding that the erroneous denial of the right to a jury trial in this case is reversible per se comports with both the inviolate nature of the right to a jury trial (see *Shaw v. Superior Court* (2017) 2 Cal.5th 983, 994; *Grafton Partners v. Superior Court*, *supra*, 36 Cal.4th at p. 958) and the revocability of jury trial waivers under section 631 (see *Byram*, *supra*, 74 Cal.App.3d at pp. 650-651 ["[t]he purpose of section 631 is to provide a means whereby the parties may waive a jury but not to impose conditions constituting an irrevocable waiver"]; *Cowlin v. Pringle* (1941) 46 Cal.App.2d 472, 476; *Duran v. Pickwick Stages System* (1934) 140 Cal.App. 103, 109).  The construct created (in dicta) by cases like *Gann*, *McIntosh*, and *Byram* to distinguish between the erroneous denial of a jury trial "in the first instance," before there has been any waiver, and the erroneous denial of a jury trial in the "second instance," after an unsuccessful motion for relief from a jury trial waiver, undermines these principles. (See *Rincon*, *supra*, 8 Cal.App.5th at p. 18 [describing a supposed "'split of authority'" in the two situations].)  Indeed, the consequence is the same in either instance:  The court has wrongfully denied a party its constitutional right to a jury trial. And in either situation, the aggrieved party has the same choice: challenge the constitutional violation (however it occurred) by writ of mandate or by appeal.  Where the aggrieved party has not attempted to game the system by failing to object to a trial by the court, there is no reason to apply a stricter standard on appeal.

Moreover, as stated, courts have recognized how difficult, if not impossible, it is to show prejudice from the denial of the constitutional right to a jury trial.  (*Gann*, *supra*, 231 Cal.App.3d at p. 1704; see *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1383, 1398 [the "task of proving actual prejudice on appeal" is

"daunting (perhaps impossible)"].)  Thus, requiring an appellant challenging an order denying a motion for relief from a jury trial waiver to show actual prejudice would essentially leave discretionary mandate review as the only practical remedy, hardly adequate protection for a constitutional right that is such "'a basic and fundamental part of our system of jurisprudence [it] should be zealously guarded.'"  (*Stofer v. Shapell Industries, Inc.* (2015) 233 Cal.App.4th 176, 189; see *Villano v. Waterman Convalescent Hospital, Inc.* (2010) 181 Cal.App.4th 1189, 1205 ["If [the appellant] had sought review by writ, she would not have been required to show a miscarriage of justice; however, we would have had the option of denying the writ and waiting to see whether she prevailed at trial."]; see also *People v. Miller* (N.Y. Sup. Ct. 1990) 149 Misc.2d 554, 561 ["The historic background of constitutional provisions establishing the jury mode of trial would appear to secure to the citizen who, upon reflection and in due course, seeks in good faith and without prejudice to retrieve it after waiver.  And where there is no objective basis to justify denial of such a petition, the discretionary withholding of the right can only equate with its abridgement."].)  When addressing "a right so fundamental as to be characterized by our Constitution as one which should 'remain inviolate,' the court should only deny the privilege thus accorded" where "some adverse consequence will flow" from a party's change of heart. (*People v. Osmon* (1961) 195 Cal.App.2d 151, 154].)

Finally, more recent cases have expressed concern about the dicta in cases like *Gann*, *McIntosh*, and *Byram* and have affirmed that a party appealing from an order denying a jury trial need not show prejudice.  (See, e.g., *Brown v. Mortensen*, *supra*, 30 Cal.App.5th at p. 938 ["Unwarranted denial of the right

to a jury trial is in excess of the trial court's jurisdiction and constitutes reversible error per se."]; *Rincon, supra,* 8 Cal.App.5th at p. 18 ["when a trial court erroneously deprives a party of a jury trial on a cause of action the party was entitled to submit to a jury, reversal of the judgment on that cause of action is required"]; *Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc., supra,* 238 Cal.App.4th at p. 493.) We therefore follow the line of authority created by *Boal, Simmons,* and *Bishop* and conclude Mackovski does not have to show prejudice.

C.     *The Trial Court's Order Imposing Sanctions Must Be Vacated*

As stated, before the trial court issued its final statement of decision, Viewcrest filed a motion under section 128.5 seeking monetary sanctions against Mackovski, Mackovska, and Albert. The court granted the motion and awarded Viewcrest $70,540.95 in sanctions. The trial court's order imposing sanctions under section 128.5 was based "primarily" on the court's finding, "after conducting the court trial," that the action was frivolous and that the plaintiffs and their attorney prosecuted it in bad faith. Because the court should not have conducted the trial it did, its findings must be vacated and cannot be the basis of a sanctions order under section 128.5. Therefore, the order imposing sanctions is vacated.[9]

---

[9]     We do not reach the arguments by Mackovski and Albert that Viewcrest did not comply with the procedural requirements of section 128.5. As for the sanctions order against Mackovska, Viewcrest is not entitled to sanctions against her under section

24

## DISPOSITION

The judgment is reversed.  The order awarding sanctions is vacated.  Albert's request for sanctions is denied.  The parties are to bear their costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


ZELON, J.

---

128.5 because Viewcrest did not comply with the safe harbor provision before the court sustained Viewcrest's demurrer to Mackovska's causes of action without leave to amend.  (See *In re Marriage of Sahafzadeh-Taeb and Taeb* (Aug. 26, 2019, A152178) ___ Cal.App.5th ___, ___, fn. 2 [2019 WL 4012569, p. 1, fn. 2]; *Nutrition Distribution, LLC v. Southern SARMs, Inc.* (2018) 20 Cal.App.5th 117, 124-125.)